IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHRIS SHEPHERD, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:04-CV-3530-JOF |
| PILGRIM'S PRIDE CORPORATION, | : | |
| a Delaware corporation, | : | |
| | : | |
| Defendant. | : | |

## OPINION AND ORDER

This matter is before the court on Defendant's motion for summary judgment [56], Plaintiffs' motion to certify class [68], and Plaintiffs' motion for leave to file supplemental response in opposition to Defendant's motion for summary judgment [74].[1]

**I.   Background**

    **A.   Procedural History**

---

[1]This court views Plaintiffs' motion for leave to file supplemental response in opposition to Defendant's motion for summary judgment as essentially a motion for leave to file a surreply. The Local Rules do not contemplate that a party will file a surreply. See L.R. 7, N.D. Ga. Nevertheless, the court examined the materials submitted by Plaintiffs in their motion and finds that the contents thereof do not affect the court's decision. Therefore, Plaintiffs' motion for leave to file a surreply is DENIED AS MOOT [74].

AO 72A
(Rev.8/82)

On October 15, 2004, Plaintiffs, Chris Shepherd and C.C. Gill, filed this putative class action for breach of contract, unjust enrichment, and breach of covenant of good faith and fair dealing, against Defendant, Pilgrim's Pride, in the Superior Court of Fulton County.  On December 3, 2004, Defendant removed the action to this court.  On March 20, 2006, Defendant filed a motion for summary judgment.  On July 7, upon the order of the court, Plaintiffs' motion to certify class was filed.  This court heard oral argument on Defendant's motion for summary judgment on August 10.  On August 14, Plaintiffs filed a motion for leave to file supplemental response in opposition to Defendant's motion for summary judgment.

### B. Facts

For several years, ConAgra Poultry (hereinafter "ConAgra") offered two bonus programs, the Management Incentive Plan ("MIP") and the Sales Incentive Plan ("SIP"), which provided bonuses to management and sales employees, respectively.  ConAgra's 2004 fiscal year ran from June 1, 2003 to May 31, 2004.

In May 2003, Defendant began negotiations to purchase ConAgra Poultry.  On June 9, 2003, Defendant announced its intention to acquire ConAgra.  The acquisition closed on November 23, 2003.  At both the time of the announcement of the acquisition and the closing of the acquisition, ConAgra had not instituted, finalized, or approved an SIP or MIP for the fiscal year of 2004.

2

Prior to closing on the purchase of ConAgra, Defendant sent documents to ConAgra employees with answers addressing some questions asked by employees. Specifically, a document entitled ConAgra Poultry Company Employee Q&A and dated June 9, 2003 contained the following passage:

> 5. What happens to my pay?
> You will continue on ConAgra Poultry's pay policies until the close of the sale after which time you will be covered by Pilgrim's Pride pay policies. We expect the pay policies will be similar. The only thing that will definitely change after the closing is the name of the company on your paycheck

In another document entitled, Salaried Questions and Answers - Week of July 21st, Defendant included the following question and answer:

> 8 DOES PILGRIM PRIDE HAVE A BONUS PLAN FOR THERE [sic] SALARY EMPLOYEES AS CONAGRA DOES?
> Pilgrim's Pride does have a bonus program. There are differences in the program content and eligible positions. More information will be shared after the close.

In January 2004, Mike Murray, Executive Vice President and Director of Sales and Marketing for Defendant, met with Charles Carrigan to discuss the MIP and SIP programs. At this meeting Mike Murray agreed to implement the old bonus program using the sales plan for this year and that it would pay out at the end of the ConAgra fiscal year. Further, he instructed that all MIP/SIP participants could be informed of this decision. Upon Mr. Murray's request, Lee Turner prepared both SIP and MIP programs for the fiscal year 2004. On June 28, 2004, Defendant announced that no annual bonuses were to be paid.

### C. Contentions

Plaintiffs claim that Defendant has breeched an oral agreement to pay bonuses to members of the MIP and SIP programs when it failed to pay bonuses at the end of ConAgra's fiscal year. Further, Plaintiffs contend that Defendant's actions also constitute a breach of covenant of good faith and fair dealing. In the alternative, Plaintiffs contend that if there was no oral agreement between the parties regarding bonuses, then they are entitled to recover for unjust enrichment.

Defendant claims that it is entitled to summary judgment on Plaintiffs' breach of contract claim as it never entered into an agreement to pay bonuses to Plaintiffs. Because it contends that Plaintiffs' breach of contract claim fails, Defendant avers that Plaintiffs' claim for breach of covenant of good faith and fair dealing should also fail as it is not an independent cause of action. Finally, Defendant contends that it is entitled to summary judgment on Plaintiffs' unjust enrichment claim because Plaintiffs have been compensated for their work and thus have not conferred a benefit on Defendant requiring payment in equity.

## II. Discussion

### A. Miscellaneous

Although Rule 23(c)(1) requires the district court to decide the issue of class certification "as soon as practicable," courts have recognized that, at least in some cases, it may be appropriate in the interest of judicial economy to resolve a motion for summary judgment or a motion to dismiss prior to ruling on class certification. *See Thornton v.*

4

*Mercantile Stores Co., Inc.*, 13 F. Supp. 2d 1282, 1289 (M.D. Ala.1998); *Wright v. Schock*, 742 F.2d 541, 543-44 (9th Cir. 1984). "Ruling on a dispositive motion prior to addressing class certification issues may be appropriate where there is sufficient doubt regarding the likelihood of success on the merits of a plaintiff's claims, where inefficiency would result, or where neither plaintiffs nor members of the putative class would be prejudiced." *Thornton*, 13 F. Supp. 2d at 1289 (citations omitted). When a defendant moves for summary judgment prior to class certification, the defendant is assuming the risk of stare decisis protection rather than the protection of res judicata; "[w]here the defendant seeks summary judgment knowing of the possibility that other plaintiffs will enter the case and not be bound thereby, it is not for the plaintiffs or the court to deter them from assuming that risk." *Id.,* at 1289-90.

The court finds that there is sufficient doubt regarding the likelihood of success on the merits of Plaintiffs' claims so as to justify addressing the matter prior to addressing class certification. Moreover, Defendant has specifically sought to have the issue of summary judgment adjudicated prior to the motion for class certification. Therefore, the court will first address Defendant's motion for summary judgment.

### B.     Motion for Summary Judgment

#### 1.     Breach of Contract

In their briefing and during oral argument, Plaintiffs argued that Defendant "made promises to honor the MIP/SIP program prior to, at the time of, and after the acquisition of ConAgra." "Accordingly, Plaintiffs contend that the oral promise occurred at the beginning of their employment with [Defendant] and was again confirmed by Mike Murray, in January of 2004."

In *Arby's, Inc. v. Cooper*, 265 Ga. 240, 241 (1995), the Georgia Supreme Court found that "[t]o be enforceable, a promise of future compensation must be made at the beginning of the employment." In finding such, the Georgia Supreme Court relied on *Management Search, Inc. v. Morgan*, 136 Ga. App. 651, 653-54(1) (1975), and *Sineath v. Lane Co.*, 160 Ga. App. 402, 405 (1981).

In *Management Search, Inc.*, 136 Ga. App. 651 (1975), the Georgia Court of Appeals found a promise to pay bonuses made during the term of employee's employment was unenforceable. In this case the employee entered into a written contract of employment in 1971. During July and August 1972, his employer offered bonuses to employees who produced a certain amount of commissions during the month. Although the plaintiff won these bonuses due to his production, he never received them.

The court found that "where one undertakes to perform for another service or labor for a given sum, any amount paid in excess of that sum, not based upon a new consideration, is a

mere gratuity." *Id.* at 653. The court also found that such a promise made at the beginning of the employment is enforceable but is not enforceable "if made pending the term or after the performance is completed." *Id.* (citing *J.L. Phillips & Co. v. Hudson*, 9 Ga. App. 779 (1911); *Duncan v. E.H. Cone, Inc.*, 16 Ga. App. 253 (1915)).

Further, the Georgia Supreme Court in *Arby's* found that a promise for future compensation in order to be enforceable, "must also be for an exact amount or based upon a 'formula or method for determining the exact amount of the bonus.'" *Arby's*, 265 Ga. at 241(citing *Christensen v. Roberds of Atlanta, Inc.*, 189 Ga. App. 289, 291-92(2) (1988)).

Plaintiffs contend that statements in two papers sent by Defendant to the employees on June 9 and July 21, 2003 evince a promise for future compensation. Specifically, the paper dated June 9, 2003 entitled, ConAgra Poultry Company Employee Q&A, in the only relevant part states:

> 5. What happens to my pay?
> You will continue on ConAgra Poultry's pay policies until the close of the sale after which time you will be covered by Pilgrim's Pride pay policies. We expect the pay policies will be similar. The only thing that will definitely change after the closing is the name of the company on your paycheck.

Next in the document entitled, Salaried Questions and Answers - Week of July 21st, Defendant included the following question and answer:

> 8   DOES PILGRIM PRIDE HAVE A BONUS PLAN FOR THERE [sic] SALARY EMPLOYEES AS CONAGRA DOES?

7

> Pilgrim's Pride does have a bonus program. There are differences in the program content and eligible positions. More information will be shared after the close.

The court finds that these statements, while made prior to the employment of the Plaintiffs, are neither for an exact amount nor are they based upon a formula or method for determining the exact amount of the bonus. Defendant merely states that its pay policies including, presumably but not definitely, its bonus structure are similar to ConAgra Poultry's pay policies. When asked about the bonus plan specifically, Defendant stated that it had a bonus plan but that there were differences between Defendant's plan and ConAgra's current plan. Under the standard set by the Georgia Supreme Court in *Arby's*, neither of these statements is definite enough to constitute an enforceable promise for future compensation.

Plaintiffs also contend that any uncertainty in the bonus plan under Defendant was disposed of when Mike Murray specified how the plan was to be implemented in January of 2004. The Georgia Court of Appeals faced a similar situation in *Edwards v. Central Georgia HHS, Inc.*, 253 Ga. App. 304 (2002). In this case the plaintiff argued that "even if the parties' agreement was indefinite at the time of formation, 'the subsequent words and conduct of the parties made the bonus provisions of the employment contract definite.'" *Id.* at 306.

The *Edwards* court, relying on *Arby's*, found that subsequent actions of an employer making a contract more definite did not render the promise enforceable. *Id.* Similarly, Mike Murray's statements made in January 2004, approximately two months after the acquisition,

8

cannot render the indefinite promises made in documents provided to Plaintiffs definite and therefore enforceable.

Finally, Plaintiffs contend that Mike Murray's promise in January 2004, by itself, constitutes an enforceable promise which Defendant breached. Plaintiffs argue that this promise is supported by additional consideration as they assisted in the transition and expended extra effort to increase the profitability of the company in anticipation of earning the bonuses promised. This case is factually similar to that before the Georgia Court of Appeals in *Management Search, Inc*. Just as in that case, the court finds that Plaintiffs' production in anticipation of earning the bonuses does not constitute new consideration necessary to bind Defendant. Relying on the clear language set down by the Georgia Supreme Court in *Arby's*, this court finds that a promise of future consideration must be made at the beginning of the employment in order to be enforceable.

For all of these reasons, the court finds that Defendant has not breached any contract to pay benefits under any bonus plan. Therefore, the court GRANTS Defendant's motion for summary judgment with respect to Plaintiffs' breach of contract claim.

9

### 2.     Breach of Covenant of Good Faith and Fair Dealing

In *Stuart Enterprises Intern., Inc. v. Peykan, Inc.*, 252 Ga. App. 231 (2001), the Court of Appeals of Georgia found that the plaintiff's claim of breach of the covenant of good faith and fair dealing was not an independent cause of action which could be asserted separately from the claim for breach of contract. Because the jury had found for the defendant on plaintiff's breach of contract claim, the Court of Appeals of Georgia found that there could be no breach of the covenant of good faith and fair dealing. Similarly, here, as the court finds that Plaintiffs have not asserted a viable claim for breach of contract, Plaintiffs have no claim for breach of the covenant of good faith and fair dealing.

Therefore, the court GRANTS Defendant's motion for summary judgment on Plaintiffs' claim for breach of the covenant of good faith and fair dealing.

### 3.     Unjust Enrichment

Defendant contends that it is entitled to summary judgment on Plaintiffs' claim of unjust enrichment.

"The theory of unjust enrichment is basically an equitable doctrine that the benefitted party equitably ought to either return or compensate for the conferred benefits when there was no legal contract to pay." *Morris v. Britt*, 275 Ga. App. 293, 294 (2005) (citations omitted). "The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received." *Id.*

In *Rodriguez v. Vision Correction Group, Inc.*, 260 Ga. App. 478 (2003), the Georgia Court of Appeals addressed a similar factual situation. In that case, the plaintiff, the former chief financial officer of the defendant, sued complaining that she never received the stock options that she was "promised." Rodriguez brought claims of breach of contract, unjust enrichment, and quantum meruit. After it found that she was not entitled to recover for breach of contract, the Court of Appeals addressed Rodriguez's equity claims. The court found that Rodriguez could not recover under these theories "because she cannot show that she was not already reasonably compensated for her services." *Id.* at 268. Further, the court noted that Rodriguez "cited no cases where an employee was allowed to recover damages in quantum meruit or unjust enrichment after she was already paid the salary she negotiated." *Id.*

Here, to recover on a theory of unjust enrichment, Plaintiffs must show that they did something extra which was not compensated by the salary arraignment. In response to Defendant's motion for summary judgment Plaintiffs merely contend:

> As described in Plaintiffs' complaint and the facts herein, from the time of the acquisition until the end of the FY2004, [Defendant] induced food service employees to continue working toward their bonuses and continually misrepresented that MIP and SIP bonuses would be paid. Throughout FY2004, [Defendant] encouraged MIP/SIP participants to meet and exceed their goals. In reliance of these representations, Plaintiffs exerted extra efforts, beyond those required under their employment, in order to meet those specified bonus goals.

Pltf. Response Brief at 24.

11

Plaintiff Gill only identifies one specific thing that she did outside of her job description in hopes of reaching the promised bonus, namely her trip to the National Restaurant Association conference in Chicago. She also contends that she would work during her lunch hours and after hours to ensure the profitability of the company. Plaintiff Gill was paid for her services pursuant to her salary arrangement. Plaintiff Gill has not stated that her salary was unfair; rather, she concedes that she thought her base salary was competitive. Like the plaintiff in *Rodriguez*, Plaintiff cannot show she was not already reasonably compensated for her services. With regard to Plaintiff Shepherd, Plaintiffs have not elucidated what, if anything, Plaintiff Shepherd specifically did in excess of his job responsibilities so as to confer a benefit on Defendant for which he should be compensated. Plaintiffs rely mostly on the contentions made in their complaint to support their claim for unjust enrichment. Like the plaintiff in *Rodriguez*, Plaintiffs have not cited any "cases where an employee was allowed to recover damages in unjust enrichment after she was already paid the salary she negotiated." *Id.*

As Plaintiffs have not shown any evidence that they provided a separate benefit for which they were not compensated in some way by their salary arrangement, the court finds that Plaintiffs have not raised a material issue of fact showing that Defendant has been unjustly enriched. Therefore, the court GRANTS Defendant's motion for summary judgment with regard to Plaintiffs' claim for unjust enrichment.

AO 72A
(Rev.8/82)

Based on the court's resolution of the Defendant's motion for summary judgment, the court concludes that Plaintiffs' motion for class certification is moot.

### III. Conclusions

The court GRANTS Defendant's motion for summary judgment [56], DENIES-AS-MOOT Plaintiffs' motion to certify class [68], and DENIES-AS-MOOT Plaintiffs' motion for leave to file supplemental response in opposition to Defendant's motion for summary judgment [74].

**IT IS SO ORDERED** this 12th day of March 2007.

                                                  s/ J. Owen Forrester
                                                  J. OWEN FORRESTER
                                      SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)